**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARITES MONTEMAYOR GARCIA, <br><br> Plaintiff, <br><br> v. <br><br> CHARLES STANLEY, <br><br> Defendant. | Case No. 14-cv-01806-BLF <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES** <br><br> [Re: ECF 113] |

Plaintiff Marites Montemayor Garcia ("Plaintiff") brings this action against Defendants Creditor Specialty Service, Inc. ("CSS") and Charles Stanley, Jr. ("Stanley"), (collectively, "Defendants") for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq.* ("RFDCPA"). Having prevailed on summary judgment against Defendant Charles Stanley, Jr., Plaintiff moves for attorneys' fees and costs. ECF 113.

Having considered the submissions, the relevant law, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for attorneys' fees and costs as follows.

**I.   BACKGROUND**

This lawsuit arises out of Defendants' attempt to collect consumer debts from Plaintiff. Plaintiff incurred a debt on a consumer credit account issued by Provident Credit Union. Garcia Decl. ¶ 3, ECF 93-4. After experiencing financial hardship, Plaintiff defaulted on the debt. *Id.* Thereafter, the debt was transferred to CSS for collection, where Stanley was an executive officer.

Garcia Decl. ¶ 3; Stanley Dep. Tr. 28:6-25, ECF 93-6.

On May 1, 2013, CSS mailed a collection letter in an envelope with a glassine window, which exposed portions of the envelope's contents. Garcia Decl. ¶¶ 5-6; Stip. Facts 2, ECF 93-3. Visible on the face of the envelope was CSS's name, its return address, a "large red dollar sign logo," Plaintiff's name, address, and the words "SPECIAL SETTLEMENT OFFER" in bold 14 point type were seen through the glassine window. Garcia Decl. ¶ 5, Ex. 1. After receiving this letter, Plaintiff filed suit on April 18, 2014, against CSS for allegedly violating the 15 U.S.C. sections 1692c(b), 1692f(7), and 1692f(8) ("FDCPA") and Cal. Civil Code sections 1788.12(b), 1788.12(d), and 1788.17 ("RFDCPA"). Compl., ECF 1.

The Court recounts briefly the procedural history of the case to illustrate the amount of litigation work that was done. After the complaint was filed, Defendant CSS did not timely respond. On June 11, 2014, Plaintiff moved for entry of default against CSS. The parties later stipulated to vacate default on July 16, 2014 and CSS answered the complaint on July 21, 2014. ECF 14, 20.

On March 31, 2015, Plaintiff moved to compel discovery and for sanctions concurrently, because CSS had not served its initial disclosures by the October 30, 2014 deadline. ECF 27-1. In the motions, Plaintiff contended that CSS had also served objections to Plaintiff's discovery requests on December 2, 2014, but no documents had been produced. *Id.* After several meet-and-confers in February, CSS did not respond by the deadline set forth in Plaintiff's meet-and-confer letter and still had not served its disclosures or produce the requested documents when the motion to compel discovery was filed. *Id.* In response, CSS's counsel stated that due to an illness, an extension of time was necessary and made a request in an email soon after the deadline set forth in Plaintiff's meet-and-confer letter. ECF 33. The Court granted the motion to compel but denied the motion for sanctions. ECF 41

On June 8, 2015, Plaintiff moved for leave to amend the complaint because she had only learned in the week prior that CSS was operated by Charles Stanley and Stanley's involvement in the case. ECF 45-1. After the Court granted this unopposed motion, Plaintiff filed a first amended complaint on August 5, 2015. ECF 53, 54. On August 31, 2015, Defendants moved to

2

dismiss the first amended complaint in its entirety, including those directed to Charles Stanley, Jr. ECF 60. The parties also attended a mediation session on September 29, 2015 but did not settle.

On December 17, 2015, this Court granted the motion to dismiss in part with leave to amend certain claims so that Plaintiff could allege adequate facts in connection with "display and publication" of "personal financial information." ECF 73. Plaintiff then filed a second amended complaint on January 13, 2016, which Defendants moved to dismiss on March 17, 2016. ECF 74, 75. The Court denied Defendants' motion to dismiss the second amended complaint on June 16, 2016. ECF 87.

Around this time in April 2016, Plaintiff moved to compel depositions and for discovery sanctions concurrently because Defendants failed to respond to the notices of deposition twice and for failure to appear. ECF 77-1. The Court granted the motion to compel depositions, denied the motion for sanctions, and ordered Defendants to reimburse Plaintiff's counsel for travel in the form of a reasonably priced round-trip air ticket from San Jose to Southern California. ECF 84.

On July 21, 2016, Plaintiff moved for an entry of default against Defendants, who had failed to respond to the second amended complaint. ECF 89. Defendants responded that they had failed to respond only because of a clerical oversight and filed an answer the next day. ECF 90, 91.

Plaintiff then moved for summary judgment on August 4, 2016, to which Defendants also failed to respond, believing that CSS's bankruptcy filing also stayed the case against Defendant Charles Stanley Jr. ECF 93, 94. After the Court's order clarifying that the case would not be stayed against the non-bankrupt Defendant, Charles Stanley, Jr., Defendant Stanley sought leave to file an opposition, which the Court later granted. ECF 96, 97, 98.

In the order granting in part Plaintiff's motion for summary judgment, the Court found in favor of Plaintiff with respect to certain sections of the FDCPA and FRDCPA, awarded $1,500 in statutory damages, and reasonable costs and attorneys' fees. ECF 105. Plaintiff later voluntarily dismissed CSS without prejudice. ECF 107.

Now before the Court is Plaintiff's motion for attorneys' fees and costs. Plaintiff seeks an award of $64,620.00 for attorneys' fees and $2005.89 in costs and litigation expenses. Mot. 2,

3

ECF 113. Defendant Stanley opposes the motion, claiming that the amount sought is unreasonable for several reasons. Opp'n, ECF 116. After considering the parties' submission, the Court rules as follows.

## II. LEGAL STANDARD

The Fair Debt Collection Practices Act ("FDCPA") directs a court to award attorneys' fees and costs to a prevailing consumer against the liable debt collector. 15 U.S.C. § 1692k(a)(3). The Ninth Circuit held that "the FDCPA's statutory language makes an award of fees mandatory." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). Courts in the Ninth Circuit calculate an award of attorneys' fees under the FDCPA using the lodestar method, whereby a court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).

The RFDPCA also provides for an award of attorneys' fees and costs to the prevailing party, which "shall be entitled to costs of the action. Reasonable attorneys' fees, which shall be based on time necessarily expended to enforce the liability, shall be awarded to a prevailing debtor." Cal. Civ. Code § 1788.30(c). Courts awarding attorneys' fees under the RFDPCA also employ the lodestar method. *See Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 348 (2009) ("[T]he court "begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case' ") (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-1132 (2001)). As under federal case law, the lodestar "may be adjusted by the court based on [multiple] factors" in order to "fix a fee at the fair market value for the particular action." *Ketchum*, 24 Cal. 4th at 1132.

A party seeking attorneys' fees bears the burden of demonstrating that the rates requested are "in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation marks omitted); *Ketchum*, 24 Cal. 4th at 1132 (approving "use of prevailing hourly rates as a basis for the lodestar"). Generally, "the

1    relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979

2    (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).  Typically, "[a]ffidavits of the

3    plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate

4    determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United*

5    *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

6      "The party opposing the fee application has a burden of rebuttal that requires submission

7    of evidence to the district court challenging the accuracy and reasonableness of the . . . facts

8    asserted by the prevailing party in its submitted affidavits." *Camacho*, 523 F.3d at 980 (citing

9    *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992)). "The lodestar amount presumably

10   reflects the novelty and complexity of the issues, the special skill and experience of counsel, the

11   quality of representation, and the results obtained from the litigation." *Intel Corp. v. Terabyte Int'l,*

12   *Inc.*, 6 F.3d 614, 622 (9th Cir. 1993); *Ketchum*, 24 Cal. 4th at 1138 ("[F]or the most part, the

13   difficulty of a legal question and the quality of representation are already encompassed in the

14   lodestar.").  Thus, there is a strong presumption that the lodestar amount represents a reasonable

15   fee and any adjustment of that figure is proper only in "rare and exceptional cases." *Van Gerwen*

16   *v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations omitted).

17   **III.    DISCUSSION**

18      In the motion, Plaintiff seeks a total of $64,620 in attorneys' fees for 144.2 hours of

19   attorney work and $2,005.89 in costs and litigation expenses.  Mot. 2.  In reply in support of the

20   motion, Plaintiff submits a supplemental declaration supporting three additional hours spent by

21   attorney Roulston in reviewing Defendant Stanley's opposition to this motion and preparing the

22   reply.  Reply 10, ECF 118.  The requested fees are broken down by billers and hourly rates as

23   follows:

| Name | Hours | Rate | Total |
| --- | --- | --- | --- |
| Fred W. Schwinn | 69.4 | $500 | $34,700 |
| Raeon R. Roulston | 74.8 | $400 | $29,920 |
| Additional fees on fees | 3 | $400 | $1,200 |
| Total | | | $65,820 |

5

While Defendant Stanley does not challenge that an award of reasonable attorneys' fees and costs is required under the FDCPA and RFDCPA, he challenges the requested rates and amount of hours on two grounds. Opp'n. First, Stanley argues that any fees and costs incurred before Stanley was added as a defendant should not be awarded but admits that no case authority supports his argument. *Id.* at 2. Specifically, Stanley claims that a total of $17,140 in legal fees incurred prior to July 31, 2015, the date when Stanley was added to this case. *Id.* Stanley also asserts that his liability was mere "derivative" and it would be unfair to impose all the fees on him as if he were the primary responsible party. *Id.* at 5.

Second, Stanley objects to the rate and the number of hours as being excessive. *Id.* at 3. Accordingly to Stanley, there was no testimony showing that Plaintiff suffered "any real personal harm" and this case does not involve violation of constitutional rights, unlike other civil rights cases, where rates of $400 and $500 per hour are common. *Id.* Stanley further claims that this simple case involves a "fairly narrow" area of law, does not involve repetitive conduct by the Defendant, "did not advance a major public interest," and could have been resolved in small claims court. *Id.* at 3-4. Stanley also criticizes Plaintiff's counsel for being overly aggressive, noting the sanction discovery motions that counsel had filed, which the magistrate judge denied. *Id.* at 4. In addition, given that the magistrate judge ordered Defendant to pay $500 toward the cost of the flight to Los Angeles for a deposition, Stanley argues that charging $3,200 for travel time would also be inconsistent with this ruling. Stanley further points out several billing entries that were inappropriate because the tasks were for legal research that should have been unnecessary. *Id.* at 4-5.

**A.  Reasonableness of Hourly Rates**

As discussed above, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers*, 896 F.2d at 407. The Court first discusses the requested hourly rates for Fred Schwinn ("Schwinn") and Raeon Roulston ("Roulston").

Schwinn seeks an hourly rate of $500. Mot. 6. Roulston seeks an hourly rate of $400. *Id.*

6

Schwinn has approximately 19 years of experience, and Roulston has approximately 9 years of experience. *Id.* Both attorneys specialize in consumer credit litigation. Schwinn Decl. ¶ 5, ECF 113-1; Roulston Decl. ¶ 5, ECF 113-3. Courts in this district have found Schwinn and Roulston's requested rates reasonable in FDCPA cases. *E.g.*, *Martell v. Baker*, 2015 WL 3920056, at *2 (N.D. Cal. June 25, 2015) (finding $500 per hour rate for Schwinn and $400 per hour rate for Roulston to be reasonable); *Jacobson v. Persolve, LLC*, No. 14-00735-LHK, 2016 WL 7230873, at *5 (N.D. Cal. Dec. 14, 2016) (same). Cross-checking the hourly rate for attorneys set forth in the Laffey Matrix, which ranges from $608 to $747 per hour, also confirms that the requested rates are reasonable. *E.g.*, *In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005).

Defendant Stanley has not provided any evidence or attempted to rebut the "accuracy and reasonableness" specifically of Schwinn and Roulston's requested hourly rates. *Camacho*, 523 F.3d at 980 (requiring the non-moving party to submit evidence challenging the "facts asserted by the prevailing party in its submitted affidavits" in order to challenge the hourly rates). Instead, Stanley directs his argument generally to both the requested rates and the number of hours. Regardless, Stanley's objection that the fees are disproportionate to the amount of recovery or the severity of the violation misses the purpose of the consumer protection statutes at issue here. "The reason for mandatory fees is that Congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Camacho*, 523 F.3d at 978. Without the benefit of receiving reasonable attorneys' fees, private litigants would be otherwise dissuaded from vindicating their rights by bringing suit because of economic burdens. *See City of Riverside v. Rivera*, 477 U.S. 561, 579 (1986). Even though this is not a civil rights case, the purpose of the fee-shifting provision in the FDCPA and the RFDCPA is no different from those in a civil rights litigation – to implement "Congress's intent that the Act should be enforced by debtors acting as private attorneys general." *Camacho*, 523 F.3d at 978 (citing *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). Stanley's contention that this case "did not advance a major public interest" also runs contrary to the policy determination of Congress and the California legislature that these consumer protection statutes "serve an important public purpose disproportionate to their cash

7

value." *See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011) (finding the same with respect to Family Medical Leave Act).

Thus, the Court finds that Plaintiff has sufficiently demonstrated that Schwinn and Roulston's requested hourly rates are reasonable based on prevailing market rates for attorneys with similar experience and skill.

### B.     Reasonableness of Hours

A reasonable number of hours is equal to the number of hours that the attorney could reasonably bill to a private client. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  The party seeking fees bears the initial burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent. *Hensley*, 461 U.S. at 434; *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).  After the party seeking fees has come forward with its evidence supporting the time billed, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397–98.

Here, Plaintiff's attorneys have filed with the Court itemized billing statements and declarations indicating that Schwinn expended 69.4 hours, and that Roulston expended 74.8 hours, plus an additional 3 hours for fees on fees.  Ex. A, ECF 113-2; Roulston Supp. Decl., 118-1.  These declarations and exhibits have been held by the Ninth Circuit to be "satisfactory evidence" of attorneys' fees. *Camacho*, 523 F.3d at 980.  Thus, Plaintiff has satisfied her initial burden of producing evidence demonstrating the reasonableness of the requested fee.  The burden thus shifts to Defendant Stanley to submit "evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Id.*

Although Defendant Stanley has not submitted any evidence to rebut the reasonableness of

the hours, he makes a number of objections in opposition. One is that he should not be responsible for Plaintiff's attorneys' fees incurred when he was not yet a party to the litigation. Plaintiff argues that that the fees should not be reduced on this basis citing to *Padgett v. Loventhal*, 706 F.3d 1205, 1209 (9th Cir. 2013). Reply 7-8. The Ninth Circuit in *Padgett* vacated the lower's court's attorney fee calculation in a civil rights case, in which the amount of fees was reduced based on the plaintiff's success on only some of the claims filed in the complaint. *Id.* at 1207, 1209. While noting that "[f]ees for work which relates *only* to unsuccessful claims should not be awarded," the court also held that the "district court must award fees for the work that contributed to a successful result as if the successful claims were the only ones litigated." *Id.* at 1209 (emphasis in original).

Here, Stanley's objection is directed toward fees incurred when Plaintiff was litigating against a different defendant, not fees incurred for litigating an unsuccessful claim as in *Padgett*. Courts have the discretion to award a fee amount proportional to the work attributed to a specific defendant in a case with multiple defendants. *E.g.*, *Se. Legal Def. Grp. v. Adams*, 657 F.2d 1118, 1125 (9th Cir. 1981) (affirming the lower court's determination that 75% of the time was attributable to the suit as against the state defendants); *Breidenbach v. Experian*, No. 3:12-CV-1548, 2013 WL 2631368, at *4 (S.D. Cal. June 11, 2013) (splitting hours shared by multiple defendants). While the Court will not reduce hours attributed to pre-complaint factual and legal research undertaken in preparation of Plaintiff's case, which were beneficial to the claims against Stanley as well as CSS, Stanley should not unfairly bear the consequence of CSS's litigation conduct and the fees incurred prior to adding him as a defendant. Except for pre-suit investigation, the Court thus will reduce fees attributed to tasks prior to July 30, 2015, when this Court granted Plaintiff's motion for leave to add Stanley to the complaint.

Fees attributed to tasks performed by Plaintiff's attorney prior to the filing of the suit amount to $2,250. Ex. A to Schwinn Decl. Stanley argues that fees pre-dating July 31, 2015 amount to $17,140. Opp'n 2. Fees that will be reduced are obtained from subtracting $2,250 from $17,140, which is $14,890. As such, the Court will reduce $14,890 of attorneys' fees as not attributed to Stanley.

9

Stanley also argues that the hours in the case should be reduced based on Plaintiff's aggressiveness in litigating this case and the limited value of this case. Opp'n 4-5. As discussed above, the relatively small amount of statutory damages recovered in this case should not affect how attorneys' fees are calculated pursuant to the fee-shifting provisions of FDCPA and RFDCPA. *Camacho*, 523 F.3d at 978.

As to whether Plaintiff's counsel was overly aggressive and as a result, performed unreasonable hours of work, the Court finds that Stanley fails to rebut the reasonableness of the majority of hours submitted by Plaintiff, especially in light of the procedural history of the case and the behavior of Stanley's counsel throughout this litigation. First, Stanley takes exception to the filing of discovery and sanction motions. Opp'n 4; Reply 8-9. However, leading up to the two rounds of discovery and sanction motion filings, Defendants' counsel had repeatedly neglected to respond to requests for written discovery or deposition notices by the deadlines. Mot. to Compel ECF 27-1; ECF 77-1. Although Stanley argues that the motions were not necessary and could have been resolved by a phone call, this argument belies the procedural history of this case. For example, the parties met and conferred several times in relation to Plaintiff's discovery requests and the deadline was extended multiple times. Mot. to Compel. Regardless of whether Defendants' counsel had a valid excuse for the multiple extensions, the filing of discovery motions is not unreasonable given that the Court granted both motions to compel and ultimately, Defendants served the initial disclosures, produced the documents, and appeared for the deposition. Even though Plaintiff did not prevail on the sanction motions, it is not clear from the record before the Court that the sanctions motions were not necessary. Because of the untimely responses by Stanley's counsel on multiple occasions, it is not unreasonable for Plaintiff's counsel to resort to threats of sanction in order to procure Stanley's compliance. The unsuccessful sanctions motions were nevertheless part of the effort to obtain discovery from Stanley, which Plaintiff succeeded in doing. *See, e.g.*, *Padgett*, 706 F.3d at 1209; *Akins v. Enter. Rent-A-Car Co. of San Francisco*, 79 Cal. App. 4th 1127, 1133 (2000) ("Compensation is ordinarily warranted even for those unsuccessful attacks, to the extent that those attacks led to a successful claim.") (citation omitted).

Stanley next objects to the hours dedicated to "research of the law" because Plaintiff's counsel is presumably an expert and the numerous hours of research should not have been necessary. Opp'n 4-5. The Court disagrees that an attorney with the skills and experience of Plaintiff's counsel is absolved from legal research. Having reviewed the attached declarations, and the exhibit in support of this motion, the Court finds the hours expended doing research on various issues are reasonable. *See, e.g.*, *Alvarado v. Hovg, LLC*, No. 14-02549-HSG, 2016 WL 5462429, at *3 (N.D. Cal. Sept. 29, 2016) (determining in a FDCPA case that legal research hours expended by attorneys experienced in consumer law were reasonable).

It is particularly notable that instead of a settlement, complying with discovery short of a motion, or a Rule 68 offer of judgment, Defendants had put forth a stalwart defense throughout the litigation. Defendants had moved to dismiss the complaint twice and opposed every motion filed by Plaintiff. While there is nothing wrong with counsel choosing to zealously advocate for Defendants, it should not be a surprise that the number of hours Plaintiff's counsel had to expend would correlate with the amount of opposition Defendants brought to this case. Reply 2, 4-5.

Defendant Stanley further objects to 8 hours of travel time to Los Angeles County for a deposition because the magistrate judge ordered the location of the deposition as part of the compromise where Defendant would pay $500 toward the cost of the flight to Los Angeles. Opp'n 5. The Court first notes that the magistrate judge's order requiring Defendant to pay $500 was part of a resolution of a discovery dispute and was not related to calculation of attorneys' fees under the FDCPA or the RFDCPA statutes. As such, the $500 amount does not automatically replace the reasonable hours expended in connection with the discovery issue.

Second, an attorney's travel time is generally recoverable. *E.g.*, *Santiago v. Equable Ascent Fin.*, No. 11-3158-CRB, 2013 WL 3498079, at *5 (N.D. Cal. July 12, 2013) ("A lawyer's travel time is recoverable at a professional hourly rate because time spent traveling is time the attorney could not spend performing legal services for clients.") (citing *Chalmers v. City of L.A.*, 796 F.2d 1205, 1216 (9th Cir.1986). However, Plaintiff's counsel charges the same rate for travel time as for other substantive attorney work. The Court will exercise its discretion to adjust the lodestar amount attributed to travel time, to account for the fact that the traveling does not require

11

1 the intensive labor, and skill to perform the legal services as for other billing entries submitted to
2 the Court.  *See Camacho*, 523 F.3d 978 (holding that courts may adjust lodestar if circumstances
3 warrant); *Johnson v. CFS II, Inc.*, 12-01091-LHK, 2013 WL 6841964, at *9 (N.D. Cal. Dec. 27,
4 2013) (approving $200 per hour for travel time when the attorney's hourly rate was $400 per
5 hour); *Garcia v. Resurgent Capital Servs., L.P.*, No. 11-1253-EMC, 2012 WL 3778852, at *5
6 (N.D. Cal. Aug. 30, 2012) (approving travel hourly rate that is 25% of an attorney's hourly rate).
7 Accordingly, the Court reduces the 8 hours of travel time to 4 hours.

### C. Costs

Plaintiff also seeks an award of the costs incurred in the course of the litigation. Mot. 10. Similar to attorneys' fees, the FDCPA and the RFDCPA require that a prevailing plaintiff be awarded reasonable costs. 15 U.S.C. § 1692k(a)(3) (requiring an award of "the costs of the action"); Cal. Civ. Code § 1788.30 (same).  Plaintiff seeks $2,005.89 in costs, which are outlined and itemized in Exhibit A.  Stanley does not challenge these costs or argue that they are unreasonable.  Thus, the Court finds the requested amount of costs to be reasonable.  After the parties' briefing on this motion, the Clerk awarded an amount of $1,466.44 in costs against Stanley.  ECF 120.  Accordingly, the amount of $1,466.44 should offset the requested amount to the extent any items are overlapping.

### IV. ORDER

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for attorneys' fees and costs in accordance with the following:

1. An amount of $48,130, which is attributed to Fred W. Schwinn's 69.4 hours at $500 per hour, plus Raeon R. Roulston's 70.8 hours at $400 per hour, after subtracting $14,890 for fees attributed to CSS and not Stanley; and deleting four hours of travel time expended by Mr. Roulston;
2. An amount of $1,200 for 3 hours for fees on fees; and
3. An amount of $2,005.89 for costs, offset by any overlapping costs that have been

1  awarded at ECF 120.

2  Dated: March 7, 2017

3  _____
   BETH LABSON FREEMAN
4  United States District Judge